UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 FEB 11  PM 1: 28

CLERK
BY
DEPUTY CLERK

| | |
|---|---|
| PATIENT A, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 5:14-cv-000206 |
| STATE OF VERMONT, AGENCY OF HUMAN SERVICES, DEPARTMENT OF MENTAL HEALTH, PAUL DUPRE, COMMISSIONER OF DEPARTMENT OF MENTAL HEALTH, in his individual and official capacity, CORRECT CARE SOLUTIONS, DEPARTMENT OF CORRECTIONS, and ANDREW PALLITO, COMMISSIONER OF DEPARTMENT OF CORRECTIONS, in his individual and official capacity, | ) |
| Defendants. | ) |

**OPINION AND ORDER RE:
DEFENDANTS' PARTIAL MOTION TO DISMISS
(Doc. 17)**

Plaintiff Patient A alleges various causes of action against defendants State of Vermont, Agency of Human Services ("AHS"); Department of Mental Health ("DMH"); Paul Dupre, Commissioner of DMH; Correct Care Solutions ("CCS"); Department of Corrections ("DOC"); and Andrew Pallito, Commissioner of DOC, relating to Patient A's incarceration from August 13, 2013 through on or about April 3, 2014. Patient A alleges that he suffers from various cognitive impairments, that he spent over seven months of his incarceration in segregation, and that this extended segregation worsened his psychological conditions and caused him harm. (Doc. 1 at 1-3.) Defendants moved to dismiss Patient A's claims in part. (Doc. 17.) For the reasons stated below, defendants' motion is GRANTED IN PART and DENIED IN PART.

1

I.  **Background**

The following facts are drawn from Patient A's complaint. (Doc. 1 at 1-3.) Patient A[1] suffers from Autism Spectrum Disorder, Asperger's Type; Attention Deficit Hyperactivity Disorder; Antisocial Personality Disorder; and Oppositional Defiant Disorder. He was incarcerated at the Northeast Regional Correctional Facility in Vermont on August 13, 2013 for an alleged parole violation. Patient A was designated by DOC as "seriously functionally impaired" soon thereafter. On or about August 30, 2013, he was transferred to Southern State Correctional Facility ("SSCF") in Springfield. On or about April 3, 2014, Patient A was transferred to Vermont Psychiatric Care Hospital ("VPCH") in Morrisville.

Patient A claims that he was held in segregation for over seven months—"nearly all of his incarceration since August 13, 2013"—even though he required inpatient hospitalization for his mental health conditions. (Doc. 1 at 4.) In segregation, Patient A was confined in isolation to a small cell for approximately twenty-two hours each day. (*Id.* at 13.) He alleges that his segregated confinement caused him to "engage[] in self-harming behaviors, suicidal ideations, poor eating habits, and extended bouts of crying and/or screaming." (*Id.* at 6.) He also claims that he suffered uses of force, including segregation, because of his mental disabilities and that these uses of force would not have been permitted in the hospital setting that he required. (*Id.* at 11.) He claims that "the harassment and discriminatory treatment [he] suffered at the hands of other prisoners and staff while incarcerated but after he was identified as needing hospital level psychiatric treatment traumatized him and triggered . . . paranoia and psychotic symptoms . . . ." (*Id.*) Upon his arrival at VPCH, Patient A "was noted to have experienced substantial weight loss, and had bruises, abrasions and scratches on his wrists, forearms, and ankles attributed to his time in corrections." (*Id.* at 14.)

Patient A alleges that defendants knew of his need for inpatient psychiatric treatment but did not fulfill their duties to secure him proper placement in a psychiatric care facility until April 2014. Specifically, he alleges that defendant Pallito knew in 2013 and 2014 "about specific individuals in his correctional facilities who had been held in segregated circumstances for more than a week due in part to the prisoners' mental health condition," (*id.* at 5) and in any case that

---

[1] The court previously granted Patient A's motion to proceed under a pseudonym. (Docs. 2, 3.)

2

Pallito "learned about [Patient A's] placement in segregated circumstances due in part to [his] mental health condition, some time prior to March 28, 2014." (*Id.*) Patient A claims that employees of defendants CCS[2] and DOC identified him as requiring inpatient hospital care due to decompensation of his mental health by February 8, 2014. (*Id.* at 6, 13.) Patient A alleges that once DOC and CCS "notified Defendant DMH of [Patient A's] need for hospitalization, [he] was . . . eligible for involuntary treatment, and Defendants AHS,[3] DMH[4] and Dupre became responsible for [his] appropriate treatment and hospitalization." (*Id.* at 6-7.) He also alleges that at all times relevant to the complaint, defendant Dupre "was aware that . . . individuals in need of treatment were not being placed in appropriate treatment settings in a timely manner but instead at times were being held in segregated correctional cells for long periods of time," in violation of Vermont law. (*Id.* at 7-8.)

Patient A also alleges that defendants continued to hold him in segregated confinement despite their awareness that such confinement was causing his mental health to deteriorate. (*Id.* at 6.) Defendant Pallito "did not personally intervene or document any effort to contact other state officials to notify them of this emergency need for a hospital bed" for Patient A. (*Id.*) Likewise, he claims that defendants DOC and CCS "were aware of [his] . . . disabilities and failed to identify and implement necessary accommodations to prevent those disabilities from resulting in punitive actions or other harms to [Patient A] while in DOC custody." (*Id.* at 10.) Patient A alleges that defendant Dupre "had actual knowledge as early as February 28, 2014 that [Patient A] was being held in segregation in a correctional facility, suffering harm, and in need of and eligible for hospital level of care." (*Id.* at 8.) However, Patient A claims, "Dupre failed to adequately respond to the known harm and risk of harm such placement was inflicting on [Patient A.]" (*Id.* at 9.)

---

[2] CCS is "a corporate contractor under contract with the State of Vermont to provide a comprehensive health care program and services, including mental health care, to prisoners housed in the State of Vermont." (Doc. 1 at 2.)

[3] AHS "has overall responsibility for providing appropriate placement and care for people in state[] custody insofar as Defendants DOC and DMH are major components thereof." (Doc. 1 at 2.)

[4] DMH "is a governmental entity authorized by state law to provide comprehensive service to all citizens of the state with mental health and related problems." (Doc. 1 at 2.)

3

Patient A also claims that defendant CCS discontinued his Focalin medication and "ordered him" to take Ritalin, even after his mother "informed Defendant DOC that Ritalin had made [him] psychotic in the past." (*Id.* at 13-40.)

Patient A alleges in his complaint six causes of action: (1) cruel and unusual punishment in violation of the Eighth Amendment, pursuant to 42 U.S.C. § 1983, against defendant Pallito; (2) violation of his substantive due process rights under the Fourteenth Amendment caused by his segregated confinement in a correctional facility, pursuant to 42 U.S.C. § 1983, against defendant Dupre; (3) violation of his rights under Title II of the Americans with Disabilities Act ("ADA") caused by his segregated confinement in a correctional facility due to his disability related behavior, against defendants AHS, DOC, and DMH; (4) violation of the Rehabilitation Act caused by his segregated confinement in a correctional facility, against defendants AHS, DOC, and DMH; (5) violation of the Vermont Fair Housing and Public Accommodations Act caused by segregated confinement in a correctional facility, against defendants AHS, DOC, and DMH; and (6) medical malpractice against defendant CCS for failure to provide Patient A with appropriate mental health treatment.

Defendants move to dismiss the first cause of action against defendant Pallito to the extent Pallito is sued in his official capacity; the second cause of action against defendant Dupre to the extent Dupre is sued in his official capacity and for failure to state a claim; and the fifth cause of action against defendants AHS, DOC, and DMH on the ground that it is barred by sovereign immunity. (Doc. 17.)

## II. Motion to Dismiss Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need not contain "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but to survive a motion to dismiss it must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4

alleged." *Id.* If a plaintiff has failed to "nudge[ ] [his] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, they must be dismissed.

### III. Analysis

#### A. Patient A Has Failed to State a Claim Against State Officials in their Official Capacities

Patient A names Dupre and Pallito as defendants in both their individual and official capacities. Defendants move to dismiss the first and second causes of action to the extent Patient A alleges them against Dupre and Pallito in their official capacities. (Doc. 17 at 3-4.)

"The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal quotation omitted). It is settled that neither a state nor any of its entities that function as "arms of the state" may be sued under 42 U.S.C. § 1983. *Komlosi v. N.Y. State Office of Mental Retardation & Dev. Disabilities*, 64 F.3d 810, 815 (2d Cir. 1995) (internal citations omitted). Nor has Vermont waived its sovereign immunity under § 1983. 12 V.S.A. § 5601(g) (Vermont Tort Claims Act provision reserving "the rights of the State under the Eleventh Amendment").

Patient A concedes that he may not sue defendants Dupre and Pallito in their official capacities. (Doc. 21 at 5.) Patient A's first and second causes of action are DISMISSED to the extent they are alleged against defendants in their official capacities. The first cause of action is retained against defendant Pallito in his individual capacity.

#### B. Patient A Has Successfully Stated a Claim Against Defendant Dupre for Violation of His Eighth Amendment Rights As Applied Through the Fourteenth Amendment

Patient A alleges as his second cause of action that his "segregated confinement in a correctional facility" violated his substantive due process rights under the Fourteenth Amendment. (Doc. 1 at 16.) Specifically, Patient A alleges that Dupre's "acts and omissions related to [Patient A's] continued incarceration, segregation, and lack of appropriate mental health treatment from February 28, 2014 through April 3, 2014 constituted deliberate indifference to [Patient A's] right to appropriate medical care, in violation of the Fourteenth Amendment." (*Id.*)

Defendants move to dismiss Patient A's second cause of action for failure to state a claim. They argue that Patient A's second cause of action is a claim of inadequate mental health treatment—a claim they argue is rooted in the Eighth Amendment. Because the Eighth Amendment provides the explicit textual source of protection against inadequate mental health treatment for an incarcerated person, defendants contend, Patient A's claim of inadequate mental health treatment as a separate and additional violation of substantive due process under the Fourteenth Amendment should be dismissed. (Doc. 17 at 5-6.) The court agrees that the claim Patient A alleges is a deprivation of his Eighth Amendment rights, as applied through the Fourteenth Amendment.

Because "[s]ection 1983 is not itself a source of substantive rights," the first step in analyzing a claim under it "is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation omitted). Substantive due process for the most part protects "matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* at 272. As defendants properly point out, Supreme Court precedent instructs that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* at 273 (internal quotations omitted); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").

"The Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners, which includes needs for mental health care." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal quotations and citation omitted). Patient A's second cause of action essentially alleges that his segregated confinement constituted improper treatment of his mental health conditions and that he consequently suffered harm. He claims that defendant Dupre was "responsible for [his] appropriate treatment and hospitalization" (Doc. 1 at 7); that Dupre was aware that individuals in need of inpatient psychiatric treatment were instead being held in segregation, including, as of February 28, 2014, Patient A himself (*id.* at 7-8); that Dupre knew or should

6

have known that people with "intense mental illness" often suffer harm as a result of being confined in segregation (*id.* at 8-9); and that Dupre "failed to adequately respond to the known harm and risk of harm such placement was inflicting on [Patient A]." (*Id.* at 9.) The complaint alleges under the second cause of action that defendant Dupre's behavior "constituted deliberate indifference to [Patient A]'s right to appropriate medical care . . . ." (*Id.* at 16.) Patient A's second cause of action thus "merely recloak[s] an Eighth Amendment claim as a Fourteenth Amendment claim." *Bain v. Cotton*, No. 2:06 CV 217, 2009 WL 1660051, at *7 (D. Vt. June 12, 2009).[5]

The cases that Patient A invokes to support his contention that "claims for deliberate indifference to a serious medical condition . . . are brought under both the Eighth Amendment *and* the Due Process Clause of the Fourteenth Amendment," (doc. 21 at 6), concern people subject to involuntary medical treatment outside of the prison setting. *Bolmer v. Oliveira*, 594 F.3d 134 (2d Cir. 2010), and *Youngberg v. Romeo*, 457 U.S. 307 (1982), cited by Patient A in his brief, both concern substantive due process claims arising from involuntary commitment to psychiatric facilities, not a prison inmate's placement in segregation or access to adequate medical care. The latter type of claim is clearly governed by the Eighth Amendment.

Other case citations reveal that Patient A does not distinguish between the application of the Eighth Amendment's protection against cruel and unusual punishment to the states through the Fourteenth Amendment and analysis of an independent substantive due process right. He argues that "the Constitutional violation asserted here has a substantial history of being actionable through application of the Fourteenth Amendment." (Doc. 21 at 10.) He cites *Spavone*, 719 F.3d at 134, for the proposition that courts consider cruel and unusual punishment claims under both the Eighth and Fourteenth Amendments. (Doc. 21 at 9.) However, the *Spavone* court described the plaintiff's right to be free from cruel and unusual punishment as

---

[5] It is true that an inmate who is placed in segregation for extended periods of time may have a valid substantive due process claim stemming from a liberty interest in remaining with the general prison population. *See, e.g., Deane v. Dunbar*, 777 F.2d 871, 875-76 (2d Cir. 1985). Patient A does not make this particular claim, to which the level of mental health care he received while incarcerated is analytically irrelevant. Even if count two of Patient A's complaint is construed to make such a claim, it fails because Patient A points to no Vermont law creating the requisite liberty interest. *See id.* ("Since the due process clause of the Fourteenth Amendment does not create such a liberty interest [in remaining with the general prison population], plaintiffs must rely on [state] law." (internal citation omitted)).

arising "under the Eighth and Fourteenth Amendments" because the Eighth Amendment is applicable to the states through the Fourteenth Amendment. *See Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) ("[T]he Eighth Amendment . . . applies to the states through the Fourteenth Amendment."). The *Spavone* court did not say that a claim sounding in the Eighth Amendment should be analyzed as a Fourteenth Amendment substantive due process violation. Similarly, *Caiozzo v. Koreman*, 581 F.3d 63, 66 (2d Cir. 2009), which Patient A cites, merely applied the subjective standard for cruel and unusual punishment claims by convicted inmates under the Eighth Amendment to the same claims brought by pre-trial detainees under the Fourteenth Amendment. *See United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) ("While the Eighth Amendment's protection does not apply until after conviction and sentence, the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment.") (internal quotation and citations omitted).

Defendants argue for dismissal of the claim—even properly construed as one derived from the Eighth Amendment—because Dupre is not a "prison official." (Doc. 24 at 2.) Patient A concedes that Dupre is not a prison official. (Doc. 21 at 7.) A plaintiff may nonetheless assert an Eighth Amendment claim against individuals who are not technically prison officials—contractors, for instance, or mental health providers operating under other agencies within correctional facilities. *See, e.g., Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) ("[S]tate action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.") (internal quotations omitted); *Barnes v. Ross*, 926 F. Supp. 2d 499, 505-06 (S.D.N.Y. 2013) (analyzing Eighth Amendment claim against state mental health office employees).

"To state a claim under Section 1983, [a] plaintiff must allege direct or personal involvement in the alleged constitutional violation." *Anderson v. Ford*, No. 3:06CV1968 (HBF), 2007 WL 3025292, at *5 (D. Conn. Oct. 16, 2007) (citing *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001)). Patient A has alleged sufficient personal involvement on the part of Dupre, already discussed above, to sustain a claim that Dupre was deliberately indifferent to his right to adequate mental health care while imprisoned. *See Barnes*, 926 F. Supp. 2d at 507

(denying motion to dismiss § 1983 claim against state office of mental health employee because five-minute interview by employee of inmate constituted sufficient direct personal involvement).

Patient A has sufficiently alleged a claim against Dupre for deliberate indifference to his right to adequate mental health care. Patient A's claim against Dupre therefore survives as an alleged violation of Patient A's Eighth Amendment rights, as applied through the Fourteenth Amendment. *See Makas v. Miraglia*, 300 F. App'x 9, 10 (2d Cir. 2008) (analyzing claim pled as substantive due process violation under the Fourth Amendment).

### C. Patient A's Claim Under Vermont's Public Accommodations Act is Barred by Sovereign Immunity

Patient A's fifth cause of action alleges a violation of 9 V.S.A. § 4502, the Vermont Fair Housing and Public Accommodation Act, against defendants AHS, DOC, and DMH. (Doc. 1 at 18.) A plaintiff may not sue a state or an agency thereof in federal court without the state's consent. *Pennhurst*, 465 U.S. at 100. Vermont has consented to suit in state court under this Act, but not federal court. *See* 9 V.S.A. at § 4506(a) ("A person aggrieved by a violation of this chapter may . . . bring an action . . . in the Superior Court of the county in which the violation is alleged to have occurred."); *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) ("[A] State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation."). Patient A concedes that this claim is barred by sovereign immunity. (Doc. 21 at 10.) Patient A's fifth cause of action is DISMISSED.

### CONCLUSION

For the reasons stated above, defendants' partial motion to dismiss Patient A's claims is GRANTED IN PART and DENIED IN PART.

Dated at Rutland, in the District of Vermont, this 11th day of February, 2015.

Geoffrey W. Crawford, Judge
United States District Court