UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

PATIENT A, )
)
    Plaintiff, )
)
v. ) Case No. 5:14-cv-000206
)
VERMONT AGENCY OF HUMAN )
SERVICES, VERMONT DEPARTMENT )
OF MENTAL HEALTH, PAUL DUPRE, )
COMMISSIONER OF DEPARTMENT OF )
MENTAL HEALTH, in his individual and )
official capacity, CORRECT CARE )
SOLUTIONS, VERMONT DEPARTMENT )
OF CORRECTIONS, and ANDREW )
PALLITO, COMMISSIONER OF )
DEPARTMENT OF CORRECTIONS, in his )
individual and official capacity, )
)
    Defendants. )

**OPINION AND ORDER RE:
DEFENDANT CORRECT CARE SOLUTIONS'S MOTION FOR PROTECTIVE
ORDER QUASHING OR MODIFYING PLAINTIFF'S RULE 30(B)(6) DEPOSITION
NOTICE
(Doc. 101)**

    Plaintiff has filed suit against Defendants for alleged deficiencies in the psychological and physical care provided to him while he was incarcerated at Southern State Correctional Facility in 2013 and 2014. Plaintiff claims that Defendant Correct Care Solutions ("CCS")—the company which contracted with the Department of Corrections ("DOC") to deliver medical and mental health care to inmates—committed malpractice in failing to provide sufficient and appropriate mental health services to him.

    Pending before the court is CCS's Motion for Protective Order under Rule 26(c) of the Federal Rules of Civil Procedure. (Doc. 101.) CCS requests relief from the obligation to comply with Plaintiff's Rule 30(b)(6) deposition notice. Defendant's Motion (Doc. 101) is GRANTED in part and DENIED in part.

1

I.   **Analysis**

The 2015 amendments to Rule 26(b)(1) of the Federal Rules of Civil Procedure clarify that the scope of discovery extends only to nonprivileged matters that are both (a) relevant to a claim or defense *and* (b) "proportional to the needs of the case" (emphasis added).[1] In making proportionality determinations, the court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* However, "the [c]ourt is not obligated to make formal and explicit findings regarding each of the[se] factors." *Meeker v. Life Care Ctrs. of Am., Inc.*, No. 14-cv-02101-WYD-NYW, 2015 WL 7882695, at *3 (D. Colo. Dec. 4, 2015) (internal quotation marks and citation omitted).

The court can manage the financial costs and other burdens of discovery in several ways. For example, the court can limit discovery if it determines that the proposed discovery is outside the scope permitted by Rule 26(b)(1), "unreasonably cumulative or duplicative," or "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

Additionally, where "good cause" is demonstrated, the court may forbid otherwise permissible discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, 593 F. App'x. 32, 36 (2d Cir. 2014) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). If the evidence sought is relevant, "the burden is upon the party seeking non-disclosure or a protective order to show good cause." *Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981). "Good cause is established by demonstrating a particular need for protection." *Rosas v. Alice's Tea Cup, LLC*, No. 14 Civ. 8788(JCF), 2015 WL 4097947, at *2 (S.D.N.Y. July 6, 2015) (international quotation marks and citation omitted).

---

[1] The amendments took effect on December 1, 2015.

2

CCS claims that Plaintiff's proposed Rule 30(b)(6) deposition seeks broad discovery on topics neither relevant nor proportional to the needs of his case. It argues that because the requested topics lie outside the scope of permissible discovery, and because preparing a witness on these issues will impose unnecessary and undue burden and expense on CCS, good cause supports issuance of a protective order. CCS also asks that if any of the contested discovery is permitted, it be reframed in interrogatory form. In response, Plaintiff contends that the requested information is relevant and proportional to his medical malpractice claim and that CCS has not sufficiently justified its need for protection. Plaintiff also opposes CCS's request for reframing the proposed discovery as interrogatories.

A.  Topic 1: Corporate Structure and Finances

Plaintiff seeks discovery as to CCS's "[c]orporate structure and finances including overall profitability, regional profitably, and contract-based profitability regarding the contract with the State of Vermont." (Doc. 101-4 at 2.) Plaintiff claims that this information is relevant to both his malpractice claim, as well as his claim for punitive damages.

The court agrees with CCS that its corporate structure and finances are irrelevant to Plaintiff's malpractice claim. However, the general financial condition of CCS is relevant to Plaintiff's claim for punitive damages. *See One Source Envtl., LLC v. M + W Zander, Inc.*, No. 2:12-cv-145, 2014 WL 5090855, at *5–6 (D. Vt. Oct. 9, 2014); *see also Gust v. Wireless Vision, L.L.C.*, Case No. 15-2646-KHV, 2015 WL 9462078, at *5 (D. Kan. Dec. 24, 2015) ("Generally, information about a party's current net worth or financial condition is relevant to the issue of punitive damages."). Though CCS contends that Plaintiff has not yet alleged a plausible claim for such damages, "the vast majority of federal district courts which have addressed the discoverability of financial information before a claim for punitive damages has been clearly established have held that such information is discoverable." *Christy v. Ashkin*, 972 F. Supp. 253, 253 (D. Vt. 1997); *see Searcy v. Esurance Ins. Co.*, Case No. 2:15-cv-00047-APG-NJK, 2015 WL 9216573, at *1 (D. Nev. Dec. 16, 2015) ("The majority approach is that a plaintiff is not required to make a *prima facie* showing of merit on its punitive damages claim before permitting discovery of a defendant's net worth." (citation omitted)).

3

However, the court is mindful of CCS's concerns in preparing a Rule 30(b)(6) deponent on such a broad topic. *See Searcy*, 2015 WL 9216573, at *2 (in punitive damages case, court opines that plaintiff could have obtained sufficient discovery through less burdensome means, including "a targeted request for [financial data] limited to information for a few years"). Accordingly, the court limits the discovery of CCS's financial information to data concerning its overall net worth, from 2013 (the start of Plaintiff's incarceration) to the present. Any information disclosed will be subject to the parties' confidentiality agreement. (Doc. 72.)

### B. Topic 2: Contract with DOC

Plaintiff seeks discovery as to:

> Details concerning the extent to which CCS was able to honor all aspects of its DOC contract during the Plaintiff's incarceration (August 2013 to February [2014]) and details about how the State performed quality assurance of the contract during that time, especially in terms of oversight of individuals with serious mental illness.

(Doc. 101-4 at 2–3.)

The performance of CCS's contractual obligations to the DOC is not relevant to Plaintiff's claim of medical malpractice. Whether CCS was in compliance with all of its contractual obligations has little or no bearing on whether it violated the standard of care when providing services to Plaintiff. *See Commerce & Indus. Ins. Co. v. Vulcraft, Inc.*, No. 97 CIV. 2578 DAB MHD, 1998 WL 823055, at *12 (S.D.N.Y. Nov. 20, 1998) (obligations related to claims of professional malpractice are "distinct from any contract into which the parties may have entered"). This information does not need to be disclosed by CCS.

### C. Topics 3–5: Data on Other Individuals Under CCS's Care

Plaintiff seeks discovery as to:

> (3) "Numbers of individuals with mental health, developmental or intellectual disabilities, and individuals with both mental health and developmental or intellectual disabilities under Defendant's care in Vermont during the time contracted to serve Vermont prisoners, broken down by month and year, as well as the same data for all individuals under Defendant CCS' care nationwide, broken down by state, month and year";

4

(4) "Numbers of individuals identified as meeting criteria for inpatient psychiatric treatment who were under Defendant's care in Vermont during its contract with Vermont, by month and year, and similar data for all individuals under Defendant's care nationwide broken down by state, month and year"; [and]

(5) "Numbers of individuals in the groups referenced in [Topic] #4 above who were not transferred to an inpatient psychiatric facility within twenty-four hours of Defendant CCS identifying [that] they met criteria for such placement, broken down as requested above."

(Doc. 101-4 at 4.)

The court finds this information to be directly relevant to Plaintiff's case against CCS. Plaintiff, in bringing a claim of medical malpractice, must prove both "[t]he *degree of knowledge or skill possessed* or the degree of care ordinarily exercised by a reasonably skillful, careful, and prudent health care professional engaged in a similar practice under the same or similar circumstances" and "[t]hat the defendant either *lacked this degree of knowledge or skill* or failed to exercise this degree of care." 12 V.S.A. § 1908 (emphasis added). Accordingly, the extent to which CCS was familiar with providing care for prisoners who either had mental health disabilities or met inpatient psychiatric criteria is relevant in assessing what level of knowledge and skill CCS might have had when faced with Plaintiff's unique situation. By knowing this information, Plaintiff can better assess whether CCS's actions and omissions toward Plaintiff were reasonable and in line with that of a prudent health care professional engaged in a similar practice under similar circumstances.

CCS argues that the care provided to other patients is not relevant to Plaintiff's individual malpractice claim, but, in so doing, cites only to cases in which such evidence was deemed inadmissible at trial. The court takes no position on whether the requested data would be admissible as evidence. Information falling within the permissible scope of discovery "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

This information is also proportional to the needs of the case. Though CCS claims that it does not have access to the specific information requested by Plaintiff, CCS has already acknowledged that some of the responsive information is available for the 2013 calendar year. (Doc. 101-5 at 2.) Moreover, CCS, was required under its contract with the State to track and report information that is responsive to certain elements of the proposed deposition topic. (Doc.

5

107-1.) To the extent CCS has not maintained or kept track of such data, Plaintiff is entitled to ask CCS about the reasons for its unavailability.

However, the court limits the scope of the topic to the numbers of individuals under CCS's care in the State of Vermont, as this information is most directly relevant to assessing whether CCS's services aligned with those of the prudent healthcare professional engaged in a similar practice under similar circumstances. Additionally, the information need not be broken down on a monthly basis. Available annual data will suffice.

As the court finds this information to be discoverable given its relevance and proportionality to Plaintiff's malpractice claim, it need not also consider Plaintiff's argument regarding its discoverability in relation to his punitive damages claim.

### D.     Topic 6: Costs of Hiring Additional Professionals and Overtime Work

Plaintiff seeks discovery as to:

> The known or estimated cost to Defendant CCS to hire additional psychiatrists or Licensed Independent Practitioners under Vermont law, and other mental health professionals, during the time Patient A was under CCS care in late 2013 and early 2014, as well as the cost to Defendant CCS of requiring overtime work from the same classes of employees for the same time period, reported in cost per additional full shift.

(Doc. 101-4 at 3-4.)

The court finds this proposed deposition topic to be relevant to Plaintiff's malpractice claim. Plaintiff claims that in order to meet the requisite standard of care, CCS needed to provide him with augmented medical services. Care that would be prohibitively expensive would not be considered reasonable and would therefore not be required of CCS in order to meet its duty. CCS has neither sufficiently demonstrated that this information is not proportional to the needs of the case nor shown good cause to forbid its discovery. Rather, CCS states that it was never paid a lump fee or given discretion to determine staffing in its facilities. However, if the proposed information is offered into evidence at trial, CCS will be free to argue then that, irrespective of cost, CCS was not in a position to hire additional professionals or request overtime work and therefore not doing so did not fall beneath the requisite standard of care. However, such information is discoverable at this juncture.

E.  **Topic 7: CCS's Knowledge of, Plans to Deal with, and Communications with DOC Regarding Other Inmates Similarly Situated to Plaintiff**

Lastly, Plaintiff seeks discovery as to "[k]nowledge of, planning to deal with, and communications between Defendant CCS and the State of Vermont regarding responding to a prisoner who required inpatient psychiatric care but for whom no inpatient bed was available in 2013 and 2014." (Doc. 101-4 at 4.)

Information that reflects CCS's knowledge of and plans to deal with prisoners who required inpatient psychiatric care, but for whom no inpatient bed was available, is relevant to Plaintiff's malpractice claim and proportional to the needs of this case. As noted previously, one way in which Plaintiff might prove his malpractice claim is to demonstrate that CCS lacked the degree of knowledge or skill possessed by a reasonably skillful, careful, and prudent health care professional engaged in a similar practice under the same or similar circumstances. The requested information bears directly on CCS's level of knowledge and CCS has not sufficiently demonstrated good cause to forbid its discovery. The information must be disclosed.

II. **Conclusion**

For the reasons stated above, CCS's Motion for Protective Order (Doc. 101) is GRANTED in part and DENIED in part.

The parties have agreed that the requested deposition may be held remotely via video conferencing. The burden on CCS to be deposed rather than respond to interrogatories is outweighed by the importance to Plaintiff's case of being permitted to conduct a Rule 30(b)(6) deposition and ask necessary and reasonable follow up inquiries on the discoverable information. The court therefore DENIES CCS's request that the permitted discovery be reframed in interrogatory form.

Dated at Rutland, in the District of Vermont, this 1st day of March, 2016.

Geoffrey W. Crawford, Judge
United States District Court